IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

Jana Marie Hale, )
 )
      Plaintiff, )
 )  Case No. 15-CV-218-JED-FHM
v. )
 )
Federal Communication Commission et al., )
 )
 )
 )
      Defendants. )

## **OPINION AND ORDER**

Before the Court is plaintiff's Complaint (Doc. 1). Plaintiff, proceeding pro se, filed this action on April 27, 2015, seeking damages and injunctive relief. For the reasons discussed herein, plaintiff's Complaint shall be dismissed.

**I.**    **Background**

The Complaint lists as defendants the Federal Communications Commission ("FCC"), Broadcasting Satellite Service, and Scada Frequency Allocation Investigation Report. In sum, although the Complaint is lengthy and difficult to decipher, plaintiff appears to allege that she has been a victim of electronic harassment in the form of satellite frequencies being received by and emitted from her body. Plaintiff asserts that the emissions have released harmful chemical substances in her body and have caused her health issues. The Complaint refers to two unidentified doctors who determined that plaintiff had an abnormal blood count reading. (Doc. 1 at 1-2). Plaintiff relies on 126 pages of attachments to state her claim, informing the Court that the attachments "best describe the situation." (*Id.* at 2). The attachments consist of reports describing testing conducted on plaintiff's body by Melinda Kidder, a private investigator and owner of Columbia Investigations, and Hildegarde Staninger, an industrial toxicologist and founder of

1

Integrative Health Systems, LLC ("IHS"); various Michigan Public Acts; a Wikipedia page on frequency allocation; and incomprehensible handwritten notes.[1] Ms. Kidder's report reveals that she was engaged by plaintiff to perform scans of plaintiff's body to test for the presence of technology implanted in her body without her consent. (*Id.* at 100). Ms. Kidder concluded that the scans revealed abnormal readings and higher than normal electromagnetic frequency emissions from plaintiff's body. (*Id.* at 111). Ms. Staninger's report incorporates the findings of Ms. Kidder's report and concludes that plaintiff's body has five receiving signals and a single frequency emission. The report states that the frequencies are allowed by and assigned from the FCC, and the secondary allocation of the frequencies are assigned to countries that speak French. (*Id.* at 127).

Plaintiff's Complaint asserts jurisdiction pursuant to "United States, Tropical Islands, Europe." (*Id.* at 1). Plaintiff requests an unspecified amount of monetary damages comprised of the following: SCADA Assessment Cost Proposal,[2] twenty years of house payments, automobile payments for herself and for her daughter, all future medical costs for herself, Taylor Skye Hale, Hunter Hale,[3] her parents, and "anyone else" with health issues. (*Id.* at 2). Plaintiff's Complaint also appears to seek injunctive relief, as she states "stop the crime . . . not target individuals anymore." (*Id.* at 1). Plaintiff asserts she is concerned "for the city of Tulsa, [its] citizens, and especially [her] Neighbors and city officials." (*Id.* at 2).

## II.     Legal Standards

---

[1] For example, the notes include statements such as: "1 satelite [sic] can hold 100 corperations [sic] buy in @ 100,000,000 dollars"; "There are 6 satalites [sic] out there in the universe"; and "It destroy some one home life!" (Doc. 1 at 125).

[2] This document is a price quote for the three phases of the Comprehensive SCADA Assessment conducted by IHS, with costs at $1,735.00, $1,301.95, and $1,076.95 for each phase, respectively. (Doc. 1 at 128).

[3] It is unclear who these nonparty individuals are and how they are related to the plaintiff.

Plaintiff is proceeding in forma pauperis pursuant to 28 U.S.C. § 1915(a)(1), which provides that "any court of the United States may authorize the commencement, prosecution or defense of any suit . . . without prepayment of fees . . . by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees." Although plaintiff is not a prisoner, the Tenth Circuit has held that § 1915(a) is not limited to prisoners. *See Lister v. Dep't Of Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005) ("Section 1915(a) applies to all persons applying for [in forma pauperis] status, and not just to prisoners."). In enacting § 1915(a), Congress intended to provide indigent litigants meaningful access to the federal courts. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). "Congress recognized, however, that a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Id.* To prevent frivolous filings, the statute authorizes a court to sua sponte dismiss a case filed in forma pauperis where the action is frivolous or malicious, the plaintiff has failed to state a claim upon which relief can be granted, the defendant is entitled to immunity, or the plaintiff has included false allegations of poverty. *See* 28 U.S.C. § 1915(e)(2); *Stafford v. United States*, 208 F.3d 1177, 1179 n.4 (10th Cir. 2000).

Plaintiff is also proceeding pro se. Pro se pleadings must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, a district court should not assume the role of advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) ("rule of liberal construction [of pro se filings] stops, however, at the point at which we begin to serve as his advocate."). But even pro se plaintiffs are required to comply with the "fundamental requirements of the Federal Rules of Civil and Appellate Procedure" and

substantive law, and the liberal construction to be afforded does not transform "vague and conclusory arguments" into valid claims for relief. *See Ogden v. San Juan Cnty*, 32 F.3d 452, 455 (10th Cir. 1994). A court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). The liberal standard applicable to a pro se plaintiff "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall*, 935 F.2d at 1110. Sua sponte dismissal of a pro se complaint "is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999).

## III. Discussion

Before assessing the sufficiency of plaintiff's Complaint, the Court must first identify the proper parties in this case. Generally, the caption of all complaints shall include "the names of all the parties." Fed. R. Civ. P. 10(a). "But in a pro se case when the plaintiff names the wrong defendant in the caption or when the identity of the defendants is unclear from the caption, courts may look to the body of the complaint to determine who the intended and proper defendants are." *Trackwell v. United States Gov't*, 472 F.3d 1242 (10th Cir. 2007). Additionally, the Federal Rules of Civil Procedure provide that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.

In this case, it appears that plaintiff has incorrectly named as a defendant Scada Frequency Allocation Investigation Report. Upon examination of plaintiff's Complaint, the Court has determined that the subject name does not refer to a suable entity, but is a report describing

plaintiff's testing results by Ms. Staninger of IHS. (*See* Doc. 1 at 3). Accordingly, Scada Frequency Allocation Investigation Report is not a proper defendant in this case. Additionally, there is no indication in the Complaint that plaintiff instead sought to hold IHS liable for wrongful conduct. To the contrary, plaintiff appears to use the findings of the IHS report as support for her claim that she has suffered harm due to the alleged electronic harassment.[4] As a result, the Court is able to determine from the body of the Complaint that plaintiff does not intend to sue IHS.

The Court concludes that this action should be dismissed as frivolous under § 1915(e)(2)(B)(i). A lawsuit will be properly dismissed as frivolous under § 1915(e)(2)(B)(i) if the "'claim [is] based on an indisputably meritless legal theory' or if it is founded on 'clearly baseless' factual contentions." *Schlicher v. Thomas*, 111 F.3d 777, 779 (10th Cir. 1997) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Plaintiff's lawsuit essentially alleges that technology was somehow implanted in her body without her knowledge or consent, and that her health is suffering due to the transmission of satellite frequencies through the implanted technology. These factual allegations border on delusional. The Tenth Circuit has affirmed the dismissal of similar lawsuits on frivolousness grounds under § 1915(e)(2). *See, e.g.*, *Murray v. United States*, 475 F. App'x 311, 312 (10th Cir. 2012) (unpublished) (complaint alleging various conspiracies by the government, including the use of satellites to damage the plaintiff's reproductive system, was properly dismissed as frivolous); *Thibeaux v. Cain*, 448 F. App'x 863, 864 (10th Cir. 2012) (unpublished) (pro se lawsuit alleging that a wire had been implanted in plaintiff's body to monitor his thoughts

---

[4] The Court's determination is further supported by the fact that plaintiff urges the Court to contact both Ms. Kidder and Ms. Staninger for further information regarding her claims. (Doc. 1 at 2).

was factually frivolous); *Flores v. U.S. Atty. Gen.*, 442 F. App'x 383 (10th Cir. 2011) (unpublished) (affirming § 1915(e)(2) dismissal of civil rights complaint alleging that the government used outer space satellites to torture plaintiff and his family members); *Owens-El v. Pugh*, 16 F. App'x 878 (10th Cir. 2001) (unpublished) (affirming dismissal of claims as factually frivolous where prisoner alleged harassment and torture by way of a mind-control device). Despite the apparent sincerity of plaintiff's belief in her allegations, it is clear that this lawsuit is factually frivolous and should thus be dismissed pursuant to § 1915(e)(2)(b)(i).[5]

---

[5] Plaintiff's reliance on the reports of Ms. Kidder and Ms. Staninger does little to save her case because the reliability of these individuals is highly suspect. For example, the following blog post by Ms. Staninger, or "Dr. Hildy," as she refers to herself, is telling:

> A primary concern to human and wildlife is the use of these same materials for a SCADA system(s) as integrated through visWi-Fi [sic], Satellite, Wi-Fi, Radio Frequency and many other forms of energy field transmissions, which have been designed for remote human monitoring, internal biological monitoring and environmental monitoring areas are all real. Billions of dollars are spent each year in military and medical research to refined [sic] their capabilities in these areas as documented in the National Nanotechnology Initiative Supplement to the President's 2015 Budget, National Science and Technology Council, Subcommittee on Nanoscale Science, Engineering and Technology, March 2014, Washington, DC. This is only the beginning of waking up to the Big Nano World and how it will impact your life for either the good or the bad. So Rip van Winkle it is time to wake up and smell the roses before a nanobot gets you with the venom of a polymer resin.

Dr. Hildy, *FromTheDeskOf Dr. Hildy: NANO BUILDING BLOCKS: Polymers, Wires and Composites*, One Cell One Light (May 12, 2015), https://onecellonelight.wordpress.com/2015/05/18/dr-hildy-nano-building-blocks.

Further, Ms. Kidder's company, Columbia Investigations, is "one of a small handful of specialized agencies or individuals in the United States who are qualified to offer what are commonly referred to in the vernacular as 'scans' for radio frequency identification, nanomaterials, and similar technologies in individuals." *H-SCADA Scans*, Columbia Investigations (last visited June 22, 2017), https://www.columbiainvestigations.com/h-scada-scans. Ms. Kidder's biography reveals that she works with individuals who, like plaintiff, believe they are being targeted in order to "determine what might be occurring within their body at the

The Complaint should be dismissed for the additional reason that, even construing plaintiff's Complaint liberally, the lawsuit fails to state a claim under § 1915(e)(2)(b)(ii). First, the Complaint alleges that the FCC is a "United States military base" and "radio transmitter" (Doc. 1 at 1), but contains no allegations of any wrongful conduct by the FCC that would allow plaintiff relief under federal law. If plaintiff seeks to allege a claim pursuant to *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) for violation of her constitutional rights, her claim fails because a *Bivens* action cannot be brought against federal agencies, such as the FCC. *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994).

Second, with respect to Broadcasting Satellite Service, the only information plaintiff provides is that this asserted defendant is a citizen of Korea, but even this statement is speculative at best. (Doc. 1 at 1). To be clear, it appears that plaintiff's assertion is based upon Ms. Staninger's report referencing the existence of various satellite frequencies with allocations in Korea, but the same document also references frequency allocations in India, Japan, Pakistan, Thailand, Azerbaijan, Kyrgyzstan, and Turkmenistan. (*Id.* at 113). Further, it is unclear whether Broadcasting Satellite Service is a legally suable entity. Indeed, it seems that plaintiff's decision to name "Broadcasting Satellite Service" as a party to her lawsuit is solely a result of Ms. Staninger's references to the existence of broadcasting satellite services companies generally. (*Id.*). To the extent that plaintiff is requesting that the Court investigate which broadcasting satellite service is responsible for transmission of the alleged frequencies to her body, this requested relief has no basis in law. It is not the province of the Court to conduct investigation on a party's behalf. Moreover, plaintiff's Complaint is void of any mention of what federal right is implicated in this

---

time of the scan," with the goal of "provid[ing] evidence for the client should they want to have a starting point for treatment, research and/or litigation." *Id.*

lawsuit. For these reasons, plaintiff's claims, whatever they may be, must likewise be dismissed pursuant to § 1915(e)(2)(b)(ii).

Not only is plaintiff unable to prevail on the facts as alleged, the Court cannot conceive any manner in which plaintiff could amend her pleadings to state a plausible claim for relief. Namely, the speculative and frivolous nature of the case makes clear that the defects in plaintiff's Complaint are incurable. Unlike the case where amendment is proper because the pro se plaintiff's "factual allegations are close to stating a claim but are missing some important element that may not have occurred to him," *Hall*, 935 F.2d at 1110, plaintiff's allegations that her body has been targeted as a conduit for satellite frequencies is far from stating a plausible claim that would entitle her to relief. The Court thus finds that dismissal with prejudice is appropriate. *See Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (dismissal with prejudice is proper "when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile" (internal quotation marks and citation omitted)).[6]

## IV. Conclusion

For the reasons set forth above, plaintiff's Complaint (Doc. 1) is hereby **dismissed with prejudice.** A separate judgment of dismissal will be filed forthwith.

SO ORDERED this 22nd day of June, 2017.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

---

[6] The Court notes that plaintiff attempted service on the FCC and served Scada Frequency Allocation Investigation Report, but no attempt was made to serve Broadcasting Satellite Service. To the extent that plaintiff argues the Court should have compelled service of process, § 1516(e)(2) authorizes dismissal at any time, before or after service of process. *See Neitzke v. Williams*, 490 U.S. 319, 324 (1989) ("Dismissals under [the in forma pauperis statute] are often made *sua sponte* prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering such complaints."); *see also Judy v. Obama*, 601 F. App'x 620, 622–23 (10th Cir. 2015) (unpublished) (same).